UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAYMOND COLLINS,

    Plaintiff,

  v.

Case No. 20-cv-521-pp

STATE OF WISCONSIN, J.B. VAN HOLLEN,[1]
DONALD R. SCHNEIDER, WARDEN WILLIAM POLLARD,
WARDEN DYLON RADTKE,[2] KEVIN CARR,
STEPHANIE HOVE, ANDREA TYLOR CORNWELL,
KATIE YORK, KELLI S. THOMPSON, STEVEN SCHUELER,
J. TATE, D. LACOSTI, S. JANDRIN, B. GRANGER,
M. WASIELEWSKI, C. CLEARY, M. TALLIER, and M. WOLF,

    Defendants.

---

[1] In his original complaint, which the plaintiff states in his amended complaint he is incorporating by reference, the plaintiff identifies defendant Van Hollen as the Wisconsin Attorney General. Dkt. No. 1 at 2. Van Hollen is no longer the Attorney General of Wisconsin; since January 2019, the Wisconsin Attorney General has been Josh Kaul. https://www.doj.state.wi.us/professional-profiles. The plaintiff does not list J.B. Van Hollen as a defendant in his amended complaint.

[2] Also in his original complaint, in the section identifying parties, the plaintiff identifies "Warden Dylon Radtke or Warden William Pollard for G.B.C.I." Dkt. No. 1 at 2. Radtke is the warden of Green Bay Correctional Institution. https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/GreenBayCorrectionalInstitution.aspx. William Pollard was the warden of Dodge Correctional Institution before his retirement. https://www.jsonline.com/story/news/politics/2020/03/11/lincoln-hills-prison-get-new-leader-amid-shuffling-wardens/5020355002/. The plaintiff does not list William Pollard as a defendant in his amended complaint.

1

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING MOTION FOR ORDER FOR BOND (DKT. NO. 3), DENYING EMERGENCY MOTION FOR SIGNATURE BOND OR PRELIMINARY INJUNCTION FOR RELEASE (DKT. NO. 8), DENYING MOTION FOR SUMMARY JUDGMENT (DKT. NO. 10), DENYING EMERGENCY MOTION FOR TEMPORARY RELIEF (DKT. NO. 14), DENYING MOTION FOR ORDER REFUNDING INITIAL PARTIAL FILING FEE (DKT. NO. 16), DENYING MOTION UNDER WIS. STAT. §814.29(1)(b) (DKT. NO. 18), DENYING MOTION FOR INJUNCTION RELIEF FED. RULE 65 CIVIL ACTION (DKT. NO. 20) AND SCREENING AND DISMISSING AMENDED COMPLAINT (DKT. NO. 19)**

Plaintiff Raymond Collins, an inmate at the Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when they revoked his probation without a hearing. Dkt. No. 1. Since filing the complaint, the plaintiff has filed four motions that functionally are motions for temporary restraining orders, asking the court to recognize his false imprisonment and allow his release on signature bond during the COVID-19 pandemic. Dkt. Nos. 3, 8, 14, 26. He also has filed a motion for summary judgment, dkt. no. 10, and a motion for a refund of his initial partial filing fee, dkt. no. 16.

On October 26, 2020, the plaintiff filed an amended complaint, dkt. no. 19, a "notice of motion pursuant to Wis. Stat. 814.29(1)(b)," dkt. no. 18, and a request for injunctive relief based on his allegations that the defendants have retaliated against him for filing this lawsuit, dkt. no. 20. Under Federal Rule of Civil Procedure 15(a), the plaintiff may amend his complaint once as a matter of course (without the court's permission) within twenty-one days of service on

2

the defendants. Because the court must screen the plaintiff's complaint before it is served on the defendants, and because the court is just now screening the complaint, the plaintiff's amended complaint is timely and he does not need court permission to file it. This order screens the amended complaint and dismisses the case for failure to state a claim for which a federal court may grant relief. This order also resolves the outstanding motions, including the motion to proceed without prepaying the filing fee (Dkt. No. 2).

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2), Motion for Refund of Initial Partial Filing Fee (Dkt. No. 16) Notice of Motion Pursuant to Wis. Stat. §814.29(1)(b) (Dkt. No. 18)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 11, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $28.81 by June 1, 2020. Dkt. No. 13. On May 26, 2020, the court received that fee. On June 2, 2020, however, the plaintiff filed a motion to have the initial partial filing fee refunded. Dkt. No. 16. He stated that despite what his certified trust account statement showed, he did not have any income because he did not have a job and should not be required to pay the initial

3

Case 2:20-cv-00521-PP    Filed 10/29/20    Page 3 of 18    Document 21

partial filing fee. Id. at 2. He explained that the $144.07 balance his trust account statement showed was not income, but "the result of [his] family sending [him] a money order for canteen now and then." Id.

A court may waive the initial partial filing fee if a prisoner demonstrates that he "has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. §1915(b)(4). While the plaintiff does not have a job and is not generating his own income, he *is* receiving money from his family, and this qualifies as an "asset" and "means" to pay under §1915(b)(4). While the plaintiff's family may have intended him to use the money for canteen items (and while the plaintiff might want to use it for that purpose), the plaintiff chose to file this lawsuit. As explained above, if the plaintiff moves to proceed without prepaying the filing fee, and the court determines the plaintiff has means, the PLRA does not require him to pay the full filing fee up front. Instead, he can pay the initial partial filing fee and then gradually pay the remainder of the fee over time. Proceeding without prepaying the filing fee does not allow an inmate to proceed without ever paying the filing fee. The court will deny the motion for reimbursement of the filing fee.

The plaintiff then filed a "notice of motion pursuant to Wis. Stat. §814.29(1)(b)." Dkt. No. 18. In this motion he explains that he made two requests to the business office at Green Bay Correctional Institution, where he currently is confined, to pay the remainder of his filing fee out of his release account. Id. at 1; Dkt. No. 18-1 at 2. The business office denied his requests, stating that "release funds are not permitted for use in this manner." Dkt. No.

4

18-1 at 1. He asks the court to allow him to proceed without prepaying the filing fee because he now has provided proof that he cannot pay it. Dkt. No. 18 at 1. The court construes this notice as a motion to authorize the prison to take the balance of the filing fee from his release account.

First, Wis. Stat. §814.29(1)(b) applies only in civil lawsuits brought in *state* court. The plaintiff brought this lawsuit in *federal* court and the applicable statute for proceeding in federal court without prepaying the filing fee is the *federal* statute, 28 U.S.C. §1915. Second, 28 U.S.C. §1915(b) requires the court to collect fees from a "prisoner's account." The term "prisoner's account" encompasses both a prisoner's release account and a general account. Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." Wilson v. Anderson, No. 14-C-798, 2014 WL 3671878 at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code §DOC 309.466). Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy the filing fee payment requirements. Smith v. Huibregtse, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001). Although courts often will allow plaintiffs to pay the *initial partial filing fee* with funds from their release account, they generally do not allow plaintiffs to deplete their release accounts by paying the full filing fee from that account.

The plaintiff appears to misunderstand what it means when a federal court gives an inmate the ability to proceed without prepaying the filing fee. It

5

does not mean that he does not ever have to pay the filing fee. It simply allows him to pay the filing fee gradually, over time, rather than requiring him to pay it in one, lump sum.

The court will deny the plaintiff's motion for a refund of the initial partial filing fee, deny the plaintiff's motion to use his release account to pay the remainder of the filing fee and grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court will allow the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Motion for Summary Judgment (Dkt. No. 10)

On May 1, 2020, only a month into this lawsuit and before the court had had the opportunity to screen his complaint, the plaintiff filed a motion for summary judgment. Dkt. No. 10. He asserts the court should grant summary judgment in his favor because the defendants "have no facts in dispute of the plaintiff's claims." Id. at 1. The plaintiff's motion is premature. The PRLA requires the court to screen, or review, a complaint filed by an inmate who is proceeding without prepaying the filing fee, and to determine whether the complaint states a claim for which a federal court may grant relief. If a complaint survives screening, the court orders the complaint to be served on the defendants and requires the defendants to answer it. At this point in a lawsuit, the court has only one side's version of events—the plaintiff's side. A court cannot consider summary judgment until both sides of the lawsuit—the plaintiff *and* the defendants—have been heard from.

6

## III. Screening the Amended Complaint (Dkt. No. 19)

### A. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

7

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  Allegations in the Complaint

The plaintiff says that he wants to bring claims against seventeen defendants (including the ones he named in the original complaint) and says that "the amended complaint is to be incorporated in the original 1983 civil complaint." Dkt. No. 19 at 2.

The plaintiff alleges he was on parole and out in the community when a "DOC order and arrest warrant was issued by the hearing examiner Donald R. Schneider." Dkt. No. 19 at ¶7. The plaintiff states that his parole was revoked in four Wisconsin state cases: Case Nos. 79-cf-4734; 79-cf-4748; 79-cf-4751; and 79-cf-475. Id. The plaintiff asserts that he was "railroad" through a jury, found guilty, convicted and sentenced. Id. at ¶8. The plaintiff claims that this was "illegally done without the plaintiff ever being granted a revocation hearing to challenge the revocation order and arrest warrant before a revocation judge and court." Id. He also says that he never was granted legal counsel "to provide

8

the necessary 'due process of law' for a fair revocation hearing." Id. He describes this as "false imprisonment," and points to the laws that he believes mandated a revocation hearing. Id.

The plaintiff also alleges that defendant Department of Corrections Secretary Kevin Carr "nor any of his hired employees of the DOC have the right to revoke and suspend and then commit the plaintiff without granting a revocation hearing." Id. at ¶9. He asserts that he used the inmate grievance procedure at Green Bay and wrote to deputy warden Steven Schueler "and a legal notice and memorandum of law to most of the defendants in the DOC, GBCI, the State Public Defender, the Parole Board and Commission to try to solve the problem." Id. at ¶11. He states that he exhausted his administrative remedies on August 9, 2020 with defendant Stephanie R. Hove, who he alleges is the "assistant administrator." Id. He also says that he presented the facts to Cathy Jess. Id. The plaintiff alleges that on August 20, 2020, Hove said "everything is denied." Id. The plaintiff says that he gave "legal notice and memorandum about negligence of duty and care" to Kevin Carr (who he says has not responded) and Kelli Thompson of the State Public Defender (who responded to the legal notice he sent on October 11, 2020). Id. He further alleges that in response to his August 25, 2020 legal notice and memorandum to her, defendant Andrea Taylor Cornwall "managed single handed to turn the entire state public defender building and staff against the plaintiff to make sure the plaintiff did not receive any legal counsel." Id. He says that Taylor Cornwall told him that "consequently, the SPD will not appoint counsel to assist you in

9

these cases." Id. The plaintiff attaches to the amended complaint some of the "legal notices and memoranda" that he sent to these defendants, as well as Taylor Cornwall's letter to him. Dkt Nos. 19-1. He also attaches a document titled "A Notice of Lien on All Defendants Liable for Negligence," dkt. no. 19-2, and a hand-written "Summons in a Civil Action," dkt. no. 19-3.

The plaintiff alleges that the denial of a revocation hearing and a lawyer violated his rights under the Eighth and Fourteenth Amendments. Dkt. No. 19 at ¶12. He also alleges that these actions are "unconstitutional" under 18 U.S.C. §725[3]. Id. He alleges conspiracy in violation of Wis. Stat. §939.91 and sabotage under Wis. Stat. §946.12. Id. at p. 6.

The plaintiff seeks a writ of *habeas corpus* "discharging the plaintiff from custody." Id. at page 7. He also seeks $300,000 from each of the defendants in compensatory damages and $300,000 from each defendant in punitive damages. Id.

C. Analysis

The court first notes that the amended complaint does not explain when the events it describes occurred. The plaintiff does not explain when he was revoked. He does not state what sentence he received as a result of being revoked. He simply lists four cases.

Next, the court notes that one of the forms of relief the plaintiff has requested is that the court issue a writ of *habeas corpus* ordering his immediate release. The court cannot grant this relief in a lawsuit filed under

---

[3] There is no such federal statute.

10

§1983. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). If what the plaintiff seeks is release from custody, he must file a petition for a writ of *habeas corpus*, not a lawsuit under §1983.

The plaintiff also seeks damages. A plaintiff *can* seek money damages through a §1983 lawsuit. The plaintiff asks for damages because, he says, the defendants violated his due process rights by revoking his parole/probation without a hearing and without appointing him a lawyer. But if this court ended up agreeing with the plaintiff and ruling in the plaintiff's favor, the result would demonstrate the invalidity of the revocation. "[W]hen establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," however, "the claimant can be said to be 'attacking . . . the fact or length of . . . confinement . . . .'" Heck v. Humphrey, 512 U.S. 477, 481-82 (1994) (quoting Preiser, 411 U.S. at 490. (Emphasis omitted.) So, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486-87. The court must dismiss a claim if it determines that a ruling in the

11

plaintiff's favor would demonstrate the invalidity of a criminal judgment. Id. at 487.

The fact that the plaintiff is still in custody (and wishes to be released) as a result of the revocation means that his revocation sentence has not been reversed on appeal, expunged or called into question by the issuance of a writ of *habeas corpus*. The court must dismiss the plaintiff's damages claims as well as his request for *habeas* relief.

The court also notes that out of all eighteen defendants, including the fourteen he seeks to add in the amended complaint, the plaintiff mentioned only Kevin Carr, Steven Schueler, Stephanie R. Hove, Kelli Thompson and Andrea Taylor Cornwall in the body of the complaint. He does not explain how the remaining defendants were involved in the alleged denial of his revocation hearing or the denial of an attorney for revocation. The court suspects the plaintiff named many of these defendants because they hold supervisory positions. But "§ 1983 does not allow actions against individuals merely for their supervisory roles of others." Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." Kuhn v. Goodlow, 678 F.3d 552, 556 (7th Cir. 2012) (quoting Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)). The plaintiff has made no allegations that these other defendants were personally involved in the denial of his revocation hearing or in denying him a lawyer.

As for the defendants the plaintiff did mention in the body of the complaint: his allegations against DOC Secretary Kevin Carr implicate him only in his supervisory role and the plaintiff does not include any allegations that Carr was personally involved in the denial of his revocation or in denying him a lawyer. Similarly, the plaintiff alleges that Schueler and Hove dismissed his grievance regarding his parole revocation. Prison officials who deny grievances "but otherwise did not cause or participate in the underlying conduct" cannot be held liable under §1983. Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The plaintiff has not alleged that Schueler and Hove were personally involved in denying him a revocation hearing or denying him a lawyer. As for Thompson and Cornwall, as State Public Defenders, they are not a state actors, so they cannot be sued under §1983. See McDonald v. White, 465 F. Appx. 544, 548-549 (7th Cir. 2012).

Finally, as the court noted, the plaintiff attached to the amended complaint a copy of the August 25, 2020 letter he received from Andrea Taylor Cornwall, the regional attorney manager at the State Public Defender, explaining why the SPD would not be appointing a lawyer for the plaintiff. Dkt. No. 19-1 at 7. It appears that the SPD has concluded that the plaintiff is in custody at Green Bay, not because he was revoked, but because he was convicted on a homicide charge. Id. If that is the case, then the plaintiff cannot demonstrate that any denial of a revocation hearing or a lawyer for that hearing caused him harm.

13

The court will dismiss the complaint for failure to state a claim upon which a federal court can grant relief. If the plaintiff still believes that he is illegally confined, he may consider filing a federal *habeas* petition under 28 U.S.C. §2254. If he decides to file a federal *habeas* petition, he will need to demonstrate that he has "exhausted" his state remedies, and he must make sure that he timely files the petition under 28 U.S.C. §2244(d). The court includes with this order a guide entitled "Habeas Corpus: Answers to State Petitioners' Common Questions."

**IV.    Motions for Injunctive Relief (Dkt. Nos. 3, 8, 14, 20)**

The plaintiff filed four motions that the court construes as motions for temporary restraining orders. Dkt Nos. 3, 8, 14, 20. These motions ask the court to release the plaintiff on a signature bond both because he was falsely imprisoned and because of the COVID-19 pandemic. Because the court must dismiss the case, it cannot grant the motions for temporary restraining orders. This is because a court may grant a motion for a temporary restraining order only after a "clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7. 22 (2008). To make such a showing, the plaintiff must show that 1) his underlying case has some likelihood of success on the merits; 2) no adequate remedy at law exists; and 3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). As discussed above, the plaintiff's underlying claims do not have any likelihood of success on the merits.

14

The second and third motions—Dkt. Nos. 8 and 14—also reference the coronavirus pandemic and the risk it poses to inmates. The court understands the plaintiff's concerns—it has received many motions from federal inmates seeking compassionate release based on the virus. The court does not know whether the Wisconsin Department of Corrections has a compassionate release procedure; if it does, it likely requires inmates to seek release from the DOC, or through the Wisconsin state courts. The only method for a state prisoner to seek relief from a *federal* court is to file a motion for a writ of *habeas corpus*.

The plaintiff's most recent motion for injunctive relief, dkt. no. 20, makes several claims about things that have happened since the plaintiff filed this lawsuit on April 1, 2020. He says that a nurse and prison guards retaliated against him for filing the suit by moving him into "illegal" quarantine. Id. at 2. He says this was a "fake COVID-19 stunt." Id. He says he filed a complaint for being ripped off and robbed "for all lawsuits, books, and property, etc." Id. at 3. He says he has been the subject of a "very subtle campaign of illegal retaliation and harassment." Id. As with the other motions, he seeks an order releasing him from custody, or in the alternative, an order transferring him from Green Bay Correctional to Oakhill Correctional. Id. at 4.

The court already has explained that the plaintiff cannot seek release from custody through a §1983 lawsuit. But even if the plaintiff were seeking only damages for the alleged retaliation, he would need to file a separate lawsuit to do so. His claims of retaliation do not involve the defendants that he claims denied him a revocation hearing and a lawyer. If the plaintiff wants to

15

sue for damages anyone who he believes retaliated against him for filing this lawsuit, he must do so in a separate lawsuit.

**V.     Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for an order refunding the initial partial filing fee. Dkt. No. 16.

The court **CONSTRUES** the plaintiff's motion under Wis. Stat. 814.29(1)(b) as a motion to use his release account to pay the remainder of his filing fee and **DENIES** that motion. Dkt. No. 18.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 10.

The court **DENIES** the plaintiff's motions for a temporary restraining order. Dkt. Nos. 3, 8, 14, 20.

The court **ORDERS** that this case is **DISMISSED without prejudice** because the plaintiff's claims are barred by Heck v. Humphrey.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$321.19** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the

plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 29th day of October, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**